UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PEARL COTTIER and REBECCA THREE STARS, | ) ) ) | Civ. 02-5021-KES |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | REMEDIAL ORDER |
| CITY OF MARTIN; TODD ALEXANDER; ROD ANDERSON; SCOTT LARSON; DON MOORE: BRAD OTTE; and MOLLY RISSE, in their official capacities as members of Martin City Council; and JANET SPEIDEL, in her official capacity as Finance Officer of City of Martin, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiffs filed suit alleging that Martin Ordinance 122 dilutes the voting

strength of Indians by fragmenting the Indian voters into three wards, which

has the result and effect of denying the rights of Indians to vote on account of

race in violation of § 2 of the Voting Rights Act of 1965 (VRA). On remand from

the Eighth Circuit Court of Appeals, the court found that Ordinance 122

violated § 2 of the VRA. Cottier v. City of Martin, No. 02-5021, 2006 WL

3499804 (D.S.D. Dec. 5, 2006).  The court gave defendants, acting on behalf

of the City of Martin, the first opportunity to propose a districting plan that

would remedy the § 2 violation.  Defendants failed to propose a remedial plan,

instead arguing that there is no possible remedy for the violation.

"When a Section 2 violation is found, the district court is responsible for developing a constitutional remedy." Bone Shirt v. Hazeltine, 461 F.3d 1011, 1022 (8th Cir. 2006). The defendant-municipality should receive the first opportunity to propose a remedial districting plan. See Cottier v. City of Martin, 445 F.3d 1113, 1123 (8th Cir. 2006). If defendant refuses to propose a plan, then the court must fashion its own remedy. Williams v. City of Texarkana, Ark., 32 F.3d 1265, 1268 (8th Cir. 1994).

Here, defendants refused to propose a remedy, and thus, the court must fashion its own. The court may fashion its own remedy or use a remedy proposed by plaintiffs. See Westwego Citizens for Better Gov't v. City of Westwego, 946 F.2d 1109, 1124 (5th Cir. 1991). "In formulating a remedial plan, the first and foremost obligation of the district court is to correct the Section 2 violation." Bone Shirt, 461 F.3d at 1022. Second, the court's remedy should "achieve population equality while avoiding, when possible, the use of multi-member districts." Id. Third, the remedial plan must not violate § 2 or § 5 of the VRA. McDaniel v. Sanchez, 452 U.S. 130, 148, 101 S. Ct. 2224, 2235, 68 L. Ed. 2d 724 (1981); see also Bone Shirt, 461 F.3d at 1023. Finally, to the extent that an existing plan does not violate the Constitution or federal law, the court's remedial plan must adhere to the legislative judgments reflected in the existing plan. Upham v. Seamon, 456 U.S. 37, 41-42, 102 S. Ct. 1518, 1521, 71 L. Ed. 2d 725 (1982).

1.    **Correct the Violation**

For the reasons discussed below, the court adopts plaintiffs' Plan C as described herein.  In Plan C, Martin is not divided into aldermanic wards. Instead, Plan C adopts an at-large voting scheme using cumulative voting. (Docket 413-4).  Martin will still have six city council members, elections for which will be held in a 3-3 staggered cycle.  Elections will be held in 2007 for the three seats whose current members' terms expire in 2007.  Elections will be held in 2008 for the remaining three seats.  Candidates shall run as a field without designation of positions or number posts.  Candidates can be from any part of Martin.  Pursuant to the cumulative voting scheme, each voter will receive three votes.  Each voter can cast one, all, or any whole number of his or her votes for any one or more of the candidates.  No voter shall be required, however, to cast one vote, or any other minimum number of votes, for any candidate.  Nor shall any voter be required to cast all of the votes available to that voter in a particular election.  The winners of the election will be the three candidates that receive the highest number of votes.

Plan C remedies the § 2 violation in this case because it gives Indians in Martin a strong chance to elect one member of the Martin City Council in each election cycle.  In analyzing Plan C's ability to give Indian voters in Martin an opportunity to elect a candidate of their choice, the court employs a common political science theory called the "threshold of exclusion." <u>See</u>

Dillard v. Chilton County Bd. of Educ., 699 F. Supp. 870, 874 (M.D. Ala. 1988), aff'd, 868 F.3d 1274 (11th Cir. 1989). "The threshold of exclusion is the percentage of the vote that will guarantee the winning of a seat even under the most unfavorable circumstances." Id. (internal quotation omitted); see also Michael E. Lewyn, When is Cumulative Voting Preferable to Single-Member Districting?, 25 N.M. L. Rev. 197, 203-04 (1995) ("The threshold of exclusion is the fraction of the electorate that a group must exceed in order to elect the candidate of its choice, regardless of how the rest of the electorate votes." (internal quotation omitted)). In the cumulative voting context, the threshold of exclusion is calculated according to the following formula: 1/(1 + number of seats available). See Cousin v. Sundquist, 145 F.3d 818, 830 (6th Cir. 1998). Members of a cohesive minority will have an opportunity to elect the candidate of their choice so long as their percentage of the electorate population is greater than the threshold of exclusion. See Cane v. Worcester County, Md., 847 F. Supp. 369, 372 & n.5 (D. Md. 1994), rev'd on other grounds by 35 F.3d 921 (4th Cir. 1994).

Under Plan C, there will be three seats available in each election. As a result, the threshold of exclusion will be 25 percent. Ex. 180, at 19-20; T.VI, p.1188-89.[1] The court previously found, and the Eighth Circuit affirmed, that

---

[1] All exhibit or transcript citations refer to trial exhibits and testimony unless explicitly stated otherwise.

Indians in Martin are politically cohesive. As a cohesive group, Indians in Martin should be able to elect a member of the Martin city council per election cycle because they compose over 36 percent of the voting age population (VAP) in Martin. Ex. 181. Additionally, poll results from the June 2003 aldermanic election indicate that Indians constituted over 31 percent of the persons who actually voted. Ex. 184. Similarly, Indians turned out well in excess of 25 percent in the 2002 general election. T.VI., p. 1190. Because Indian voters in Martin represent more than 25 percent of the electorate, they exceed the threshold of exclusion and should be able to elect one candidate of their choice per election cycle. Plan C thus remedies the § 2 violation caused by Ordinance 122, whereby Indians are cracked among three wards to prevent them from electing their preferred candidate.[2]

Defendants argue that South Dakota law prohibits the court from adopting Plan C. Specifically, defendants argue that Martin uses the common council form of municipal government, and that state law permits neither at-large districts nor cumulative voting in the common council structure. See SDCL 9-8-4. Defendants also argue that only the voters of Martin, not the court, can change Martin's form of government.

---

[2] A cumulative voting scheme is currently used to remedy voting rights violations in two political subdivisions within South Dakota. Both the Sisseton School District and the Wagner School District use a cumulative voting scheme in their elections. T.II., p. 372.

5

The court disagrees that South Dakota law prevents the court from adopting Plan C. Indeed, the Eighth Circuit explicitly held that the court had the power to adopt Plan C: "If, at the remedy stage, a redistricting of Martin's wards appears unworkable, it appears that [Plan C] would be a viable option." Cottier, 445 F.3d at 1123 n.7. The Eighth Circuit's decision on this matter is the law of the case, and this court is bound to follow it. See Mosley v. City of Northwoods, Mo, 415 F.3d 908, 911 (8th Cir. 2005). The court thus concludes that it has the power to adopt Plan C.

The more difficult issue is whether the court should adopt Plan C even though it is not a municipal government structure authorized by South Dakota law. The decision by the Court of Appeals for the Seventh Circuit in Harper v. City of Chicago Heights, 223 F.3d 593 (7th Cir. 2000), provides guidance. In Harper, the district court found that the city's at-large voting system violated § 2 of the VRA. At the remedy stage, the city proposed a 6-1 plan, whereby six city council members were elected in single-member districts and the mayor was elected at-large. The district court found that the city's proposal did not remedy the § 2 violation. The district court then fashioned an at-large, cumulative voting scheme as its remedy.

On appeal, the Seventh Circuit affirmed the district court's finding that the city's proposal did not remedy the § 2 violation. Id. at 600. The Seventh Circuit reversed the district court's remedial plan, however, because the

6

district court changed the city's governmental structure without either complying with the statutory change mechanism or "making a judicial finding that it was necessary to make these changes to comply with federal law." Id. at 601. The Seventh Circuit limited its decision to the facts of the case and refused to eliminate cumulative voting as a potential remedy for § 2 violations. See id.

According to Harper, the court must determine whether a form of municipal government authorized by South Dakota law would remedy the violation in this case. Plaintiffs' Plan A continues Martin's current common council structure but attempts to redraw the lines in order to create one majority-Indian ward (Ward 1). (Docket 413-2). Defendants argue that Plan A is not an appropriate remedy because it does not provide Indians an effective majority in Ward 1. The court agrees.

In fashioning a remedy, "the creation of districts with bare majorities is not enough for a complete remedy." Jeffers v. Tucker, 847 F. Supp. 655, 660 (E.D. Ark. 1994) (three-judge district court). Instead, the remedy should provide sufficient cushion to give minorities "a reasonable opportunity to elect a representative of their choice." Smith v. Clinton, 687 F. Supp. 1361, 1362-63 (E.D. Ark. 1988) (internal quotation omitted) (three-judge district court), aff'd, 488 U.S. 988, 109 S. Ct. 548, 102 L. Ed. 2d 576 (1988). An effective majority, and thus an adequate remedy, requires approximately 60 percent

minority VAP.  See Jeffers v. Clinton, 756 F. Supp. 1195, 1198 (E.D. Ark. 1990) (three-judge district court), aff'd, 498 U.S. 1019, 111 S. Ct. 662, 112 L. Ed. 2d 656 (1991); see also African Am. Voting Rights Legal Def. Fund, Inc. v. Villa, 54 F.3d 1345, 1348 n.4 (8th Cir. 1995).  This effective majority adds 5 percent for minorities' low voter-turnout and low voter-registration.  See Villa, 54 F.3d at 1348 n.4.

Redistricting Martin's three-ward system will not remedy the § 2 violation in this case.  Plaintiffs' Plan A fails to provide an effective majority because it falls well short of the 60 percent VAP guideline.  Based on the 2000 census, the Indian VAP of Ward 1 would be 54.55 percent.  (Docket 413-5). Similarly, Dr. Ronald Weber, a defense expert, testified that he could not create a three-ward plan in Martin that contained an effective majority of Indians.  T.V., p. 983-84.  Based on this evidence, the court finds that it could not draw a three-ward plan that contains an effective majority of Indian voters in one ward.  Because a three-ward plan would not remedy the § 2 violation, the court cannot permit Martin to continue under the common council form of government.

According to South Dakota law, the only other type of municipal government authorized for Martin is the board of commissioners.  See SDCL 9-9-1 to 9-9-27.  The board of commissioners is composed of a mayor and either two or four commissioners elected at large.  SDCL 9-9-3.  The terms of

8

the commissioners are staggered so that one commissioner's term expires each year.  See id.  As a result, only one seat will be open in a typical election cycle.

Like the common council, adoption of the board of commissioners organizational structure would not remedy the § 2 violation in this case. Because there is only one seat open per election cycle and the voting is at-large, Indians would have little, if any, opportunity to elect a commissioner of their choice.  In this instance, the threshold of exclusion would be 50 percent, Dillard, 699 F. Supp. at 874, whereas Indians only compose about one-third of the voters in Martin.  As a result, under the board of commissioners organizational structure, white voters in Martin could thwart any effort by Indians to elect their preferred candidate.  In fact, adoption of the board of commissioners structure likely would dilute the Indian vote in Martin more than Ordinance 122 and violate § 2.  See Thornburg v. Gingles, 478 U.S. 30, 48, 106 S. Ct. 2752, 2765, 92 L. Ed. 2d 25 (1986) ("Minority voters who contend that the multimember form of districting violates § 2 must prove that the use of a multi-member electoral structure operates to minimize or cancel our their ability to elect their preferred candidates.").  In sum, the court exercises its power to implement Plan C as the proper remedy because none of

the forms of municipal government permitted by South Dakota law would remedy the § 2 violation in this case.[3]

### 2.     Population Equality

In fashioning a remedial plan, the court should achieve population equality with *de minimus* variation.  See Abrams v. Johnson, 521 U.S. 74, 98, 117 S. Ct. 1925, 138 L. Ed. 2d 285 (1997).  In other words, the court's plan must comply with the Fourteenth Amendment's one-person-one-vote requirement.  See id.  Here, Plan C achieves precise population equality because the entire City of Martin is contained in one district and all voters in that district receive three votes.  See McCoy v. Chicago Heights, 6 F. Supp. 2d 973, 984 (N.D. Ill. 1998), rev'd sub nom. on other grounds by Harper v. City of Chicago Heights, 223 F.3d 593 (7th Cir. 2000).

---

[3] Defendants contend that if the court adopts Plan C, it will not know how to run its municipal government.  Defendants note that South Dakota law has detailed statutes explaining how the municipality must run a common council government and a board of commissioners government.  Defendants also contend that they will not know whether to follow the common council statutes or the board of commissioners statutes because Plan C is a hybrid of the common council scheme and the common council scheme.  Defendants' argument overlooks, however, that Plan C does not change Martin's current common council structure.  Rather, it only changes the method of electing the city council members.  As a result, Martin would still be governed by the common council statutes so long as they do not conflict with this remedial order.

### 3.   **Multi-Member Districts**

There is a strong preference for single-member districts in judicially

fashioned remedial plans.  Absent persuasive justification, the court's

remedial plan must employ single-member districts.  Chapman v. Meier, 420

U.S. 1, 26-27, 95 S. Ct. 751, 766, 42 L. Ed. 2d 766 (1975).  An at-large

district from which multiple candidates are elected is considered a multi-

member district.  See East Carroll Parish Sch. Bd. v. Marshall, 424 U.S. 636,

639-40, 96 S. Ct. 1083, 47 L. Ed. 2d 296 (1976).  The court may fashion a

multi-member remedial plan only if it "can articulate a 'singular combination

of unique factors' that justifies" deviation from the preference for single-

member plans.  Connor v. Finch, 431 U.S. 407, 415, 97 S. Ct. 1828, 52 L. Ed.

2d 465 (1977) (quoting Mahan v. Howell, 410 U.S. 315, 333, 93 S. Ct. 979,

978, 35 L. Ed. 2d 320 (1973)).  In other words, absent a finding that "rare or

exceptional circumstances" exist, the court must fashion a remedial plan

using single-member districts.  Citizens v. Good Gov't v. City of Quitman,

Miss., 148 F.3d 472, 476 (5th Cir. 1998) (internal quotation omitted).

Although Plan C employs a single, multi-member district, the court

finds that exceptional circumstances warrant deviating from the preference for

single-member districts.  Specifically, the unique demographics of Martin

prevent the creation of a viable remedy using single-member districts.  To

fashion a single-member district plan, the court would have to divide Martin

11

into six districts.[4] Evidence indicates, however, that Martin's small population would limit the ability to field an interested candidate from each ward if the court created a six-ward plan. T.II., p. 371; T.VI., p. 1192-93; T.X., p. 2125. The court finds this evidence highly persuasive and finds that adoption of a single-district plan would, as a practical matter, increase the likelihood of vacant city council seats. This in turn means an increased chance that at least part of Martin's electorate would not be represented. Thus, the court finds that Martin's small population makes six, single-member wards impractical. See City of Quitman, Miss., 148 F.3d at 476 (indicating that exceptional circumstances exist when unique circumstances make it impractical to fashion single-member districts).

Additionally, the court finds that the Indian population in Martin is so widely dispersed that the court cannot draw a single-member district that has an effective majority of Indian voters. As noted above, an effective majority requires a minority VAP of approximately 60 percent. Here, all of the proposed single-member plans fall well short of the 60 percent guideline. Plaintiffs' Plan B uses six single-member wards with Ward 1 and Ward 2 being

---

[4] Ordinance 122 provides a city council that includes six members. The numerical composition of the city council does not violate § 2 of the VRA. See Holder v. Hall, 512 U.S. 874, 885, 114 S. Ct. 2581, 129 L. Ed. 2d 687 (1994) (plurality). The court is compelled by Upham v. Seamon, 456 U.S. 37, 42, 102 S. Ct. 1518, 71 L. Ed. 2d 725 (1982), to maintain a city council that includes six members.

majority Indian wards. (Docket 413-3; Docket 413-6). Based on the 2000 census, Ward 1 would contain 53.51 percent Indian VAP. Ward 2 would contain 52.73 percent VAP. At trial, Dr. Weber testified that he was not able to create a six-ward plan that included a ward with 60 percent Indian VAP while simultaneously complying with the constitutional prohibition on racial gerrymandering. T.V., p. 987-88. The court finds Dr. Weber's testimony on this issue to be highly credible and concludes that Indian voters in Martin are so widely dispersed that it is impossible to draw a single-member plan with an effective majority of Indian voters without running afoul of the Fourteenth Amendment's prohibition on racial gerrymandering. Thus, adoption of a single-member district would be a dereliction of the court's obligation to fashion an equitable remedy. See Bone Shirt, 461 F.3d at 1023 ("In formulating a remedial plan, the first and foremost obligation of the district court is to correct the Section 2 violation.").

Unlike the proposed single-member plans, Plan C's at-large, cumulative voting scheme will, as noted above, provide Indians in Martin a meaningful opportunity to elect one council member of their choice each election cycle. Because Plan C's at-large scheme will "'afford minorities a greater opportunity for participation in the political process than do single member districts,'" this is an exceptional circumstance warranting rejection of the preference for single-member districts. Wallace v. House, 538 F.2d 1138, 1145 (5th Cir.

13

1976) (quoting Zimmer v. McKeithen, 485 F.2d 1297, 1308 (5th Cir. 1973) (en banc)); cf. Holder, 512 U.S. at 910, 114 S. Ct. 2581 ("[N]othing in our present understanding of the Voting Rights Act places a principled limit on the authority of federal courts that would prevent them from instituting a system of cumulative voting as a remedy under § 2 . . . .") (Thomas, J., concurring in judgment).

The court also finds that Plan C's multi-member plan is consistent with both Martin's and South Dakota's legislative policies preferring multi-member wards over single-member wards in municipal elections.  Martin currently employs multi-member wards under Ordinance 122.  Additionally, South Dakota law governing municipal government only authorizes multi-member and at-large elections in municipal elections.  See SDCL 9-8-4, 9-9-1.  The court is obligated to respect and incorporate this policy decision in its remedial plan.  See Upham, 456 U.S. at 42, 102 S. Ct. 1518.  Further, neither defendants nor plaintiffs have objected to the continued use of multi-member wards, and thus, the court finds that respect for Martin's legislative policy decisions provides further support for deviating from the single-member district preference in this case.  See Bone Shirt v. Hazeltine, 387 F. Supp. 2d 1035, 1040 (D.S.D. 2005), aff'd, 461 F.3d 1011 (8th Cir. 2006); see also Hurlbut v. Scheetz, 804 F.2d 462, 464 (8th Cir. 1986).

14

Finally, adoption of a multi-member remedial plan in this case does not conflict with the policy reasons articulated by the Supreme Court in support of its preference for single-member districts: "contribut[ing] to voter confusion, mak[ing] legislative representatives more remote from their constituents, and tend[ing] to submerge electoral minorities and overrepresent electoral majorities . . . ." Connor, 431 U.S. at 415, 97 S. Ct. 1828. Regarding the first policy reason, the court finds that dividing Martin, a town with a very small geographic area, into six single-member wards will create just as much, if not greater, confusion than using an at-large system, where everyone is in the same ward. Martin is a small, densely populated town. Over a thousand people live in an area just over one-half of a square mile. Ex. 180, at 7–8. Dividing this small area into six different wards likely will create substantial confusion. T.VIII., p. 1629-30; T.IX., p. 1941. Martin's small population and geographic area also makes the second policy reason less of a concern. The candidates likely will know, and have an opportunity to interact, with every one of their constituents in this small town. T.VIII., p. 1581-82 Finally, as noted above, Plan C, when compared to a single-member district, actually increases the representation of minority voters.

In sum, the court finds that this case presents a "singular combination of unique factors that justifies" deviation from the preference for single-member districts in judicially fashioned remedial plans. Connor, 431 U.S. at

15

415, 97 S. Ct. 1828 (internal quotation omitted).  The court thus adopts

Plan C even though it is a multi-member plan.

### 4.   Compliance with Sections 2 and 5 of the VRA

Next, the court must determine whether implementation of Plan C

would violate sections 2 or 5 of the VRA.  A violation of § 2 is established "if,

based on the totality of the circumstances, it is shown that . . . [members of a

protected minority group] have less opportunity than other members of the

electorate to participate in the political process and to elect representatives of

their choice."  42 U.S.C. § 1973(b).  As a precondition to proving a § 2

violation, the plaintiff must establish the three <u>Gingles</u> factors: "(1) [T]he racial

group is sufficiently large and geographically compact to constitute a majority

in a single-member district; (2) the racial group is politically cohesive; and

(3) the majority votes sufficiently as a bloc to enable it usually to defeat the

minority's preferred candidate."  <u>Bone Shirt</u>, 461 F.3d at 1018 (quoting

<u>League of United Latin Am. Citizens v. Perry</u>, 126 S. Ct. 2594, 2613-14, 165 L.

Ed. 2d 609 (2006)) (alteration in original).

With adoption of Plan C, Indian voters would have a reasonable

opportunity to elect two Indian-preferred aldermen to Martin's city council

(one each election cycle).  Thus, Indian voters will have a reasonable

opportunity to elect two of six council members.  The evidence presented at

trial indicates that the largest number of Indian-majority, single-member

16

wards that the court could drawn is two. As a result, Indian voters have exactly the same degree of voting power under both Plan C and the single-member plan. Plan C thus does not violate § 2 because it is impossible to draw more than two single-member districts. Cf. Johnson v. De Grandy, 512 U.S. 997, 1007, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994) (stating that the first Gingles factor requires proof that one additional compact, majority-minority district could be drawn).

Plan C also complies with the nonretrogression standard of § 5 of the VRA. The benchmark for retrogression is the last legally enforceable districting plan. See Bone Shirt, 387 F. Supp. 2d at 1042. Under the prior districting plan, Indians did not have a reasonable opportunity to elect their preferred candidate. This is best illustrated by the limited success of Indian-preferred aldermanic candidates. Plan C provides Indian voters a reasonable opportunity to elect two Indian-preferred candidates, one during each election cycle, to the Martin city council. As a result, Plan C is not retrogressive and it complies with § 5 of the VRA.

### 5.    Adherence to Legislative Judgments

"Finally, the plan should not 'intrude on state policy more than is necessary' to uphold the requirements of the Constitution." Bone Shirt, 461 F.3d at 1023. Here, the court respects the legislative policies of both South Dakota and Martin by preserving as much of Ordinance 122 as possible.

17

Under Plan C, the Martin city council will still consist of six members elected for two-year terms.  The terms will continue to be staggered so that only three seats are available each year.  The only deviation from both Ordinance 122 and SDCL 9-8-4 is the court's rejection of a ward system in favor of an at-large, cumulative voting system.  This change is necessary because, as discussed above, Indian voters are so evenly distributed that "a redistricting of Martin's wards appears unworkable."  <u>Cottier</u>, 445 F.3d at 1123 n.7.

**CONCLUSION**

The court adopts the at-large, cumulative voting scheme proposed in Plan C because it is the only plan that remedies the § 2 violation in this case. Moreover, Plan C has several distinct advantages.  According to commentators, cumulative voting is particularly successful in non-partisan municipal elections in small towns with stable, evenly dispersed minority populations, just like Martin.  <u>See</u> Lewyn, <u>When is Cumulative Voting Preferable to Single-Member Districting?</u>, supra, at 226.   Additionally, because Plan C uses an at-large scheme, there is no possibility that the court's remedy is an unconstitutional racial gerrymander.  The at-large system also avoids the need to redistrict following every decennial census. Finally, the at-large system will promote the recruitment of candidates for Martin city council because the candidates will not be limited to specific

wards.  The court thus finds that Plan C provides the most equitable remedy in this case.

Based on the foregoing,

IT IS HEREBY ORDERED that defendants are hereby enjoined from conducting elections pursuant to Ordinance 122.

IT IS FURTHER ORDERED that the court adopts plaintiffs' proposed Remedial Plan C as modified herein to replace Ordinance 122.

Dated February 9, 2006.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE