UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED
MAR 25 2008
CLERK

```
*************************************************************************
                                   *
PEARL COTTIER and REBECCA          *        CIV 02-5021
THREE STARS,                       *
                                   *
              Plaintiffs,          *        MEMORANDUM OPINION
                                   *        AND ORDER ON MOTION FOR
    -vs-                            *        ATTORNEY FEES AND EXPENSES
                                   *
CITY OF MARTIN; TODD               *
ALEXANDER; ROD ANDERSON;           *
SCOTT LARSON; DON MOORE;           *
BRAD OTTE; and MOLLY RISSE, in     *
their official capacities as members of  *
Martin City Council; and JANET     *
SPEIDEL, in her official capacity as  *
Finance Officer of City of Martin, *
                                   *
              Defendants.          *
                                   *
*************************************************************************
```

Pending before the Court is Plaintiffs' Motion for Attorney Fees and Expenses, doc. 424. Plaintiffs request fees and costs for services performed from March 2002 through March 2007. For the following reasons, the Motion is granted in part and denied in part.

## BACKGROUND

This case involves a voting-rights challenge to the City of Martin's city council wards. Plaintiffs, all of whom are Native American, filed suit in 2002. In the original complaint filed under 28 U.S.C. § 1983, Plaintiffs claimed that Defendants violated their constitutional rights by adopting Ordinance 121 which created voting wards of unequal populations as part of a redistricting plan. Plaintiffs sought a preliminary and permanent injunction prohibiting Defendants from further use of the redistricting plan created by Ordinance 121. Defendants subsequently adopted Ordinance 122 which appeared to equally redistribute the population. After a trial on May 24, 2002, the Court[1]

---

[1]Judge Karen Schreier presided over the case until her recusal on July 30, 2007. The case was reassigned to this Court on August 3, 2007.

concluded that Plaintiffs' claim was moot because of the adoption of Ordinance 122. An Order denying the injunction and dismissing the Complaint was filed on May 29, 2002. Plaintiffs timely filed a motion to amend or alter the judgment and to file a supplemental complaint. The proposed supplemental complaint alleged that Ordinance 122 unconstitutionally configured the City wards in a manner that intentionally and effectively diluted the voting strength of Native Americans and kept Indian-preferred aldermen candidates from being elected, all in violation of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, and the Fourteenth and Fifteenth Amendments to the United States Constitution. On September 4, 2002, the Court granted Plaintiffs' motion to amend the judgment and file the supplemental complaint.

After an 11-day court trial in June 2004, the Court entered judgment in favor of Defendants in March 2005. Plaintiffs appealed. The Eighth Circuit affirmed with respect to Plaintiffs' constitutional claims but reversed and remanded the Voting Rights Act claim. *See Cottier v. City of Martin*, 445 F.3d 1113 (8th Cir. 2006).

On remand, the Court held that the City's wards violate the Voting Rights Act by diluting the Native American vote and ordered Defendants to propose a remedy. *See Cottier v. City of Martin*, 466 F.Supp.2d 1175 (D.S.D. 2006). Defendants failed to propose a remedy, arguing that no workable remedy existed. On February 9, 2007, the Court adopted one of Plaintiffs' proposed remediation plans and entered judgment in Plaintiffs' favor. *See Cottier v. City of Martin*, 475 F.Supp.2d 932 (D.S.D. 2007).

## DISCUSSION

The Court's analysis begins with 42 U.S.C. § 1973l(e). Under section 1973l(e) of the Voting Rights Act, "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs."[2]

---

[2] The language allowing an award of expert fees was added by amendment on July 27, 2006.

A.    Prevailing Party Status

    Defendants concede that Plaintiffs are prevailing parties on the Voting Rights Act claim, but Defendants argue that Plaintiffs cannot be deemed prevailing parties "during the first portion of this case involving the original Complaint alleging malapportionment." Defendants ask the Court to deny recovery of fees and expenses for time spent working on the original Complaint in this case. The Court rejects that request. As the Supreme Court stated in *Hensley v. Eckerhart*, 461 U.S. 424 (1983):

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
>                     *        *        *        *
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. See *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (CD Cal.1974). Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 435. The goals of Plaintiffs' original Complaint and Plaintiffs' Supplemental Complaint were the same: to have an equitable election system for the City Council in Martin, South Dakota. The original pleadings focused on the deficiencies of Ordinance 121 and its failure to create equal voting districts by population. After Plaintiffs filed suit, Defendants corrected this inequality by enacting Ordinance 122. The Supplemental Complaint alleges that Ordinance 122 dilutes the voting strength of Native Americans by fragmenting Indian voters into three wards. The claims in both Complaints involve a common core of facts. The remedial plan proposed by Plaintiffs and adopted by the Court, doc. 415, is an excellent result for Plaintiffs. The plan gives Native Americans in Martin a strong chance to elect one member of the Martin City Council in each election cycle. Accordingly, Plaintiffs are entitled to recover fees for work performed since the beginning of this litigation.

3

B.     Expert Witness Fees

Defendants assert that Plaintiffs' expert witness fees are not recoverable. On July 27, 2006,
Congress adopted the Fannie Lou Hamer, Rosa Parks, and Coretta Scott King Voting Rights Act
Reauthorization and Amendments Act of 2006 ("VRARA"). Section 6 of VRARA amended 42
U.S.C. § 1973l(e) by granting courts discretion to award "reasonable expert fees" to the prevailing
party in a Voting Rights Act case. Plaintiffs incurred the expert witness fees in this case before
Section 6 took effect, and Defendants argue that Section 6 cannot apply retroactively.

Judge Schreier addressed this issue in an unpublished decision in *Bone Shirt v. Hazeltine*,
Civ. No. 01-3032 (D.S.D. Apr. 5, 2007), where she held that Section 6 of VRARA should not be
applied retroactively and that the plaintiffs were not entitled to recover expert witness fees incurred
before adoption of VRARA. This Court agrees with Judge Schreier's analysis and reasoning in the
*Bone Shirt* decision and will apply it to the present case. Denying recovery of expert witness fees
incurred prior to enactment of VRARA is consistent with the Supreme Court's holding in *Martin
v. Hadix*, 527 U.S. 343 (1999) (refusing to apply 42 U.S.C. § 1997e(d)(3) limits on attorney fees to
legal work performed prior to effective date of the statute). Pursuant to the traditional presumption
against retroactivity, Plaintiffs cannot recover expert witness fees under Section 6 of VRARA.
Accordingly, expert witness fees will be deducted from the expenses  awarded to Plaintiffs.

Plaintiffs' tally of expert witness fees is attached to their reply brief as Exhibit A. The total
requested is $45,740.56. Exhibit A includes the June 27, 2003 expense for the exit poll but does not
include the expert witness fees paid to Defendants' expert, Mr. Weber. The expense for the exit poll
in the amount of $5,013.67 will be awarded to Plaintiffs. Judge Schreier's Memorandum Opinion
issued on March 22, 2005 discusses how the poll was conducted, including how Plaintiffs' expert
hired Indian and non-Indian polltakers from the local college and personally trained them regarding
the proper procedures for conducting a poll. (Doc. 371 at p. 31.) The Eighth Circuit ruled that the
exit poll results supported Plaintiffs' vote dilution claim. *See Cottier*, 445 F.3d at 1120. The cost
to conduct the exit poll is a compensable litigation expense. On the other hand, the fees paid to
Defendants' expert witness are not recoverable. Plaintiffs paid Mr. Weber $3,897.56 on August 26,
2003 and $1,304.53 on November 6, 2003, for a total of $5,202.08. Despite being paid to
Defendants' expert, these are expert witness fees which were not recoverable under § 1973l(e) at the

4

time they were incurred, and thus they cannot be awarded to Plaintiffs. As a result of these changes to Plaintiffs' tally of expert witness fees, the Court determines that expert witness fees in the amount of $45,928.97 will be deducted from Plaintiffs' request for expenses.

C.     Calculation of Attorney Fees and Costs

The starting point for determining an award of attorney fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. at 433.   A court should consider twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n.3 (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714,717-719 (5th Cir. 1974)). These factors were taken into account in arriving at the appropriate hourly rates and hours expended in this case, with the exception of factors (4) and (7) as they do not appear to be applicable.

1.     Reasonable Hourly Rates

In this litigation, Plaintiffs were represented by three lawyers and the hourly rates requested vary from lawyer to lawyer. The Court has reviewed the credentials of Plaintiffs' lawyers. Lead counsel for Plaintiffs is Bryan Sells. Mr. Sells graduated from Harvard College and Columbia Law School. Prior to working with the ACLU, he was a law clerk for Judge Myron H. Thompson, United States District Judge for the Middle District of Alabama. Over the course of his career, Mr. Sells has specialized in voting rights litigation and has served as lead counsel or co-counsel in the United States Supreme Court and various federal and state courts. Mr. Sells has spoken on Indian voting rights and has given testimony before the National Commission on the Voting Rights Act regarding the state of Indian voting rights in South Dakota. His affidavit represents that his hourly rate is $225.

Mr. McDonald's affidavit indicates that he is currently the director of the Voting Rights Project of the American Civil Liberties Union Foundation, Inc. He graduated from Columbia

5

University and the University of Virginia Law School, and he has practiced law for more than 35 years both in private practice and as an employee of the ACLU. His affidavit lists numerous Voting Rights Act cases in which he acted as counsel. Mr. McDonald also has been a faculty member at the University of North Carolina Law School at Chapel Hill. He wrote a book on voting rights and other books on the rights of racial minorities. He has written chapters, articles and reviews on voting rights, as well as a manual on voting rights litigation. On a number of occasions, Mr. McDonald testified about voting rights issues before Congress. His hourly rate is $400 and he was awarded fees at this rate by Judge Schreier in the *Bone Shirt* case, as well as in a South Carolina case.

Mr. Duffy is local counsel for Plaintiffs. Although Mr. Duffy's affidavit does not reveal experience with voting rights issues, he has had a distinguished career in law for over twenty years. He earned the distinction of South Dakota Trial Lawyer of the Year in 2006. Duffy charges an hourly rate of $250.

Defendants first argue that the attorney fees for work done in prior years should not be based on the lawyers' current hourly rates. Defendants suggest using Mr. Sells' 2003 hourly rate of $185 and Mr. Duffy's 2003 hourly rate of $150. In advocating the use of historic rates, Defendants fail to consider the delay in payment and the lost use of income. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing that, under fee-shifting provisions of 42 U.S.C. § 1988, "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings"); *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993) (district court abused its discretion in reducing hourly rate from the current rate to the rate charged by counsel at the time the services were performed without taking the delay factor into account). The historic rates suggested by Defendants fail to compensate the lawyers for the delay in payment, but the current rates charged by Mr. Sells and Mr. Duffy appear to overcompensate them somewhat for the work they performed some time ago. The Court will therefore reduce the rates for Sells and Duffy to $200 per hour- - which is approximately the "midpoint" between the two rates the record establishes they charged in 2003 and those charged in 2007.

6

Defendants suggest a $225 hourly rate for Mr. McDonald, arguing that it is a reasonable in-state rate for someone with Mr. McDonald's experience. Plaintiffs have produced evidence that they were unable to find members of the local bar who would represent them. In addition, Duffy said in his affidavit that he would not have been willing to represent Plaintiffs without the resources and assistance of the ACLU. The cost, complexity and undesirability of this voting rights case forced Plaintiffs to look beyond the South Dakota bar for their attorneys. Mr. McDonald's experience with voting rights issues appears to be unmatched. As a result, the $400 hourly rate charged by Mr. McDonald is appropriate even though it is more than our normal local rate. *See Bone Shirt*, 2006 WL 1788307 (D.S.D. 2006) (Judge Schreier found Mr. McDonald's $400 rate reasonable).

Paralegals Katie O'Connor and Heidi Lunsford have billable rates of $75 and $45 per hour, respectively. Defendants do not object to these rates and the Court finds that they are reasonable hourly rates for the work done by the paralegals.

    2.    <u>Reasonable Hours Expended</u>

Plaintiffs seek compensation for a total of 2,446.61 hours of work. Mr. Duffy billed 418.8 hours, but Plaintiffs have withdrawn a request for 8.35 hours of Mr. Duffy's time, resulting in a total of 410.45 billable hours for him. Mr. McDonald and Mr. Sells billed 268.1 and 1,616.03 hours, respectively. Ms. Lunsford billed 11.5 hours and Ms. O'Connor billed 132.18 hours. Defendants make numerous objections to the billings, and Plaintiffs have addressed each objection. The Court has also conducted an independent review of the hours for which compensation is sought in order to determine if any time should be excluded.

"A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). The only billings that the Court finds duplicative are Mr. McDonald's 8 hours on April 25, 2003 for attending the deposition of Mr. Weber, and Mr. Sells' 7.25 hours on April 23 and 24 for attending the depositions of Mr. McCool, Mr. Cooper and Mr. Cole. According to Plaintiffs' argument and evidence, Mr. Sells took the deposition of Mr. Weber, Defendants' expert, and Mr. McDonald defended the other three depositions of Plaintiffs' experts. The Court agrees it was reasonable to divide up the work this way under the circumstances of this case, but the lawyers will

7

be compensated only for the time on depositions they personally conducted or defended. Mr. McDonald's fees will be reduced by $3,200, and Mr. Sells' by $1,450.

Considering all of the relevant factors, all other billed hours were necessary to secure relief in this case. As a result, the Court will calculate and award fees in the following amounts:

| Attorney/Paralegal | Hours | Rate | Amount |
|---|---|---|---|
| Duffy | 410.45 | $200 | $ 82,090 |
| McDonald | 260.10 | $400 | $104,040 |
| Sells | 1,608.78 | $200 | $321,756 |
| Lunsford | 11.5 | $45 | $517.50 |
| O'Connor | 132.18 | $75 | $9,913.50 |
| | | Subtotal | $518,317 |
| Sales Tax(6%) | | Sales Tax (6%) | $31,099 |
| | | TOTAL FEES: | $549,416 |

### 3. Costs and Expenses

Section 1973l(e) of the Voting Rights Act permits the Court to award reasonable litigation expenses to prevailing parties. In their motion, Plaintiffs sought a total of $105,147.34 in expenses. Mr. Sells' affidavit includes an itemized list of those expenses. He states that the list is based on his organization's contemporaneous business records. In their reply brief, Plaintiffs withdrew a few mistaken requests for: 1) $694 for a transcript of Dr. Zax's deposition; 2) $311 for witness fees and mileage paid to Pearl Cottier and Rebecca Three Stars; and 3) $284.25 mileage fee paid to Brett Healey on July 7, 2004. The Court will also deduct $45,928.97 in expert witness fees. With these deductions, Plaintiffs expenses are $57,929.12. Defendants argue that many of the expenses are not recoverable and object to many other expenses for lack of necessity and documentation. Plaintiffs' reply to Defendants' objections contains additional documentation for and explanations of expenses questioned by Defendants.

8

The Court agrees with Plaintiffs that many of Defendants' objections result from confusion over what is recoverable under the witness-fee statute, 28 U.S.C. § 1821, or the cost statute, 28 U.S.C. § 1920, with what is recoverable under the fee-shifting statute. The fee-shifting statute allows this Court to assess "litigation expenses" that may not otherwise be claimed under § 1821 or § 1920 under the rubric or attorney fees rather than costs. Such expenses have been described by the Eighth Circuit as "out-of-pocket expenses of the kind normally charged to clients by attorneys." *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) (long distance, fax, messenger and express mail charges were reasonable out-of-pocket expenses of kind normally charged to clients by attorneys, and thus should have been included as part of reasonable attorney fee award to prevailing party in copyright case).

The Court is persuaded that most of the expenses requested by Plaintiffs are reimbursable. Unfortunately, the law in the Eighth Circuit does not allow a prevailing party to recover money spent on computer assisted legal research. *See Standley v. Chilhowee*, 5 F.3d at 325. The Court does not agree with *Standley's* holding because computerized research significantly reduces the time spent on research. Computerized research charges are often included in reimbursed expenses, especially where the billing is on a time basis, as it reduces billable hours charged by lawyers for conducting research. Nonetheless, *Standley* is controlling and this Court cannot allow the $263.70 paid for Lexis Nexis research on June 17, 2002, June 11, 2003 and July 12, 2004. The Court also will deduct as normal office overhead the postage ($271.94), office supplies ($73.12) and internet access ($128.52) expenses listed on pages 6 to 7 of Defendants' Objections (doc. 436), for a total of $473.58. *See Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("Plaintiffs are not entitled to reimbursement for expenses that are part of normal office overhead in the community.") With these deductions for computerized research and overhead expenses, Plaintiffs' litigation expenses are $57,191.84.

A few other expenses will be excluded because they are not normally charged to a client. These are laundry expenses billed in May 2003 and July 2004 ($19.87), drinks in December 2002 ($7.00 only because the other half of the $14.00 was billed to another case), and drinks in February 2003 ($8.25). With the exclusion of these expenses, the Court finds that Plaintiffs are entitled to recover expenses in the amount of $57,156.72. Accordingly,

9

IT IS ORDERED that Plaintiffs' Motion for Attorney Fees and Expenses, doc. 424, is granted in part and denied in part. Plaintiffs are awarded $549,416 in fees and $57,156.72 in expenses.

Dated this 25th day of March, 2008.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _Colleen Shulte_
DEPUTY